THEODORE J. SWIFT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31477.  Promulgated September 30, 1930.

*Virgil Y. Moore, Esq.*, for the petitioner.
*Otis J. Tall, Esq.*, for the respondent.

OPINION.

LOVE: With the exception of the contract of March 4, 1921, and the escrow instrument of March 13, 1921, the facts in this proceeding have all been presented by the petition and admissions in the answer. The petitioner complains that the respondent has refused to compute his tax liability upon a profit resulting from the sale of an undivided interest in certain lands in accordance with the capital

gain provision of the Revenue Acts of 1921 and 1924. Strictly speaking, we are concerned only with the capital gain provision of the Revenue Act of 1924, since the year 1924 is the only year covered by the appeal. The capital gain provisions of the two acts, being sections 206 (a) (1) and 208 (a) (1) of the Revenue Acts of 1921 and 1924, respectively, are as follows:

(1) The term " capital gain " means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

The respondent argues that in the instant case the sale was consummated in 1921 when the initial payment was made and executed deeds were placed in escrow. The petitioner contends that the " consummation " did not occur until the vendee finally became entitled to delivery of the deeds from the escrow agent by reason of its final payment on the purchase price. In effect the petitioner argues that the final payment was the " consummation " of the sale.

In *Charles W. Dahlinger*, 20 B. T. A. 176, the capital gain provisions of the 1921 and 1924 Acts were considered at some length. Adopting standard dictionary definitions of the verb " consummate," we held the word to mean " to bring to completion; to raise; bring or carry to the highest point or degree; to complete; to finish; to perfect; to achieve; to fulfill. The word ' consummated ' as used in the Act, is the past participle of the transitive verb above defined." Continuing, we said:

Having in mind the definition of the word " consummated," we must next consider the word " sale," for the real difficulty in this case is to determine when the sale was consummated within the meaning of the sections in question. This word " sale " has a well recognized legal significance.

The distinction between a contract to sell and a sale is fundamental in the law of sales, as is pointed out in Williston on Sales, Second Edition, Volume 1, in chapter 1, where the following definitions are given:

A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.

A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price.

\* \* \* \* \* \* \*

The distinction is some times expressed by the terms " executory " and "executed " sales. Whether a bargain between parties is a contract to sell or an actual sale, depends upon whether the property in the goods is transferred. If it is transferred, there is a sale, an executed sale, even though the price be not paid.

We concluded:

Although a contract to sell is consummated when the parties execute it, a sale, even where the subject of a contract, is incomplete and imperfect until title passes. *But a sale is complete when title passes.* At that moment both parties to the sale achieve what they set out to accomplish by the sale. A seller who formerly had property which he desired to sell, thereafter had that property

no longer. He thereupon exchanged his right and title to the property for the purchase price or the purchaser's promise to pay it. The property thereafter belonged to the purchaser and he had what he did not have before, an obligation to pay for it. The passing of title irrevocably and finally changes the rights of the parties to a sale. A sale is then "consummated." (Italics added.)

The decision above quoted related to a sale of personal property, but the principles involved are equally material herein. We think that California decisions clearly establish that the sale involved was not consummated, i. e., that title to the property did not pass until 1924, as the petitioner contends.

In *Craig* v. *White*, 187 Cal. 489; 202 Pac. 648 (1921), the Supreme Court of California was considering the effect of an escrow agreement whereby a deed of bargain and sale was deposited with a bank to be delivered to the grantee upon the completion of stated payments therefor, and to be forfeited for failure to make such payments within 30 days after they became due, the court held:

The placing of the deed in escrow did not make it an executed instrument. There had been no delivery to the purchaser, no transfer of title. Civ. Code Para. 1057; 3 Washburn on Real Property, 568; *Whitney* v. *Sherman*, 178 Cal. 435, 173 Pac. 931. It is said by this court (*Fitch* v. *Banck*, 30 Cal. 212) that an "escrow differs from a deed in one particular only, and that is delivery," but the lack of delivery is a very essential omission to the consummation of a conveyance.

Section 1057 of the Civil Code, referred to in the above quotation, provides:

SEC. 1057. A grant may be deposited by the grantor with a third person, to be delivered upon performance of a condition, and on delivery by the depository it will take effect.

In *Whitney* v. *Sherman*, 178 Cal. 435; 173 Pac. 931, the court, discussing this provision, said:

Under this rule no title passes until the condition is so far performed that the grantee is entitled to the possession of the deed.

In *Henry* v. *Pesoli*, 109 Cal. 53; 41 Pac. 819, the court held:

The execution and the placing in escrow of a deed * * *, to be delivered upon making payment of the purchase price, did not have the effect of vesting title in "the vendee" until payment was made, and the deed delivered * * *.

The last mentioned decision was one in which a vendor of real property, whose deed was in escrow awaiting payment of the purchase price, brought an action to quiet her title as against a judgment creditor of her deceased husband. The judgment creditor, asserting a lien on the property, pleaded that the plaintiff could not maintain an action to quiet title because she had no title due to the escrowed deed, and, further, that possession was necessary to main-

tain an action to quiet title, and that the vendee under the escrowed deed had possession. In addition to holding that title had not passed by the escrow, the court pointed out that under section 738 of the Civil Code, possession was no longer necessary to maintain the action.

The respondent has cited *J. T. Pittard*, 5 B. T. A. 929, as supporting his contention. That decision was upon an issue so foreign to that presented in this proceeding that we do not consider it necessary to discuss or distinguish it. The respondent has presented no other material authority.

We are of opinion that under the circumstances of this case, and in view of the law of California upon the subject, the sale involved was not consummated, i. e., title to the property did not pass from the vendor, until 1924. Accordingly, the respondent's action was in error and must be reversed.

*Judgment will be entered under Rule 50.*