THE SOUTHERN CALIFORNIA ROCK AND GRAVEL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PACIFIC ROCK AND GRAVEL COMPANY, W. L. HODGES, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28776, 30898. Promulgated June 8, 1932.

*A. Calder Mackay, Esq., George M. Thompson, C. P. A., John B. Milliken, Esq.,* and *Dan J. Chapin, Esq.,* for the petitioners.

*J. A. Lyon, Esq.,* and *E. L. Updike, Esq.,* for the respondent.

299

OPINION.

LANSDON: The proceeding at Docket No. 28776 was brought by the Pacific Company through its statutory trustee, W. L. Hodges. At the hearing counsel for the respondent suggested the death of Hodges and moved to dismiss the appeal for lack of jurisdiction, on the ground that no successor trustee had been appointed. Counsel for the petitioner then moved to substitute Agnes Wiley Hodges, Executrix of the estate of W. L. Hodges.

The deficiency notice was addressed to the Pacific Company, W. L. Hodges, Trustee, and the petition was filed by Hodges, acting for the corporation. Upon filing of the petition with deficiency notice attached, the Board acquired jurisdiction over the proceeding. At the hearing, counsel for the taxpayer, who had been employed prior to Hodges' death, appeared and offered evidence in support of allegations in the petition. In such circumstances, we think this Board has jurisdiction to hear the appeal and redetermine the deficiency. The petitioner, the Pacific Company, is still in existence for purposes of dissolution, and while there is a vacancy in the trusteeship, the Superior Court of California will doubtless appoint a successor upon proper application of any interested creditor or stockholder. Accordingly, both the respondent's motion to dismiss and the petitioner's motion to substitute the executrix of the estate of W. L. Hodges are denied. Cf. *James Duggan*, 18 B. T. A. 608.

The only controversy here relates to the basis for computing profit on the sale in 1922 of Union Rock Company stock by each of the petitioners. If the exchange by which the Union Rock Company stock was acquired occurred prior to December 31, 1920, the basis

for valuing the stock in petitioner's hands will be cost, which is the fair market value of the property exchanged therefor. If the exchange occurred after December 31, 1920, the stock will be treated as taking the place of the property and the basis for computing profit will be cost of the property exchanged for the stock. Section 202 (d) (1) of the Revenue Act of 1921.

The petitioners contend that the transfer of assets in exchange for stock actually occurred on November 2, 1919, and that only the legal formalities incident to such transfer and issue of stock remained to be done thereafter. The respondent contends that while physical possession of the assets was transferred on November 2, 1919, no title passed under the laws of California until stockholders of the petitioners consented to the transaction, either in a meeting called for that purpose, or by an instrument attached to each assignment or conveyance.

The facts disclose that for several years prior to 1919 the Pacific Company, the Southern Company and the Russell-Green-Foell Company were engaged in ruinous competition in the rock, sand and gravel business in Los Angeles. To eliminate such competition the three concerns organized the Union Rock Company in March, 1919, which thereafter marketed the products of all three. Apparently such arrangement did not prove satisfactory for on November 2, 1919, the two petitioners bought out the Russell-Green-Foell Company and transferred the combined assets of the three companies to the Union Rock Company under a contract providing that they should receive 4,000 shares of preferred stock and 16,000 shares of common stock in exchange therefor. Thereafter the Union Company operated the combined properties.

By December 24, 1920, possession of all of the property covered by the agreement of November 2, 1919, had been transferred by the petitioners to the Union Company and on that date the board of directors of each of the petitioners met and adopted a resolution directing that the terms of the agreement of November 2, 1919, be forwarded to the Union Rock Company as a formal offer. On the same date the directors of the Union Rock Company met and accepted the offer. While there had been no meeting of stockholders of either petitioner on or before December 31, 1920, all of the stockholders were directors, and, having voted in favor of the sale as directors, they could not avoid the sale on the ground that the stockholders had not assented. *In re Drosnes*, 175 N. Y. S. 628.

Tax liability resulting from sales of property is not determined by the date when legal title is transferred or the date on which certificates of stock are received in payment. Such liability is fixed as of the date the real benefits and burdens of ownership are transferred. *Brunton* v. *Commissioner*, 42 Fed. (2d) 81; *Grace Harbor*

*Lumber Co.*, 14 B. T. A. 996; *Ohio Brass Co.*, 17 B. T. A. 1199; and *T. B. Hoffer*, 24 B. T. A. 22. Ownership of corporate stock may vest prior to delivery of stock certificates. *Richardson* v. *Shaw*, 209 U. S. 365; *Galbraith* v. *McDonald*, 123 Minn. 208; 143 N. W. 353; and *T. B. Hoffer, supra*.

In our opinion the exchange was effected prior to December 31, 1920, and the basis for computing profit upon sale of the stock acquired in exchange for the business and assets of each of the petitioners is the fair market value of such property. The basis stipulated by the parties will be used in the recomputation under Rule 50.

*Decision will be entered under Rule 50.*