DAKOTA CREEK LUMBER & SHINGLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

UPRIGHT SHINGLE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

G. W. GILFILEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31811, 40654, 40655.   Promulgated September 6, 1932.

*V. Peringer, Esq.*, for the petitioner.
*T. M. Mather, Esq.*, for the respondent.

942

## OPINION.

MATTHEWS: The parties have stipulated that Gilfilen and the Upright Shingle Company each received assets of the transferor in

excess of the amount of the deficiency herein determined. These transferees contend, however, that there were other tranferees and that each is liable for only his pro rata share of the tax. This contention is without merit, in view of the decision of the Supreme Court in the case of *Phillips* v. *Commissioner*, 283 U. S. 589, in which the court held that each transferee is liable for the tax of the transferor in an amount equal to the total value of the assets received by him as transferee. It is clear, therefore, that the petitioners, the Upright Shingle Company and Gilfilen, are liable as transferees for the amount of the liability asserted against them in the event we decide that the Company was liable for the deficiency asserted by the respondent.

The respondent has included the entire profit from the sale of the Bellingham plant and timber in the Company's income for 1923, upon the theory that the sale took place in that year. The petitioner's first contention is that only the amount received in that year should be included in gross income, upon the theory that the contract provided for two things, a sale of realty for $30,000 and a sale of lumber and the sawmill for approximately $34,000; that the amount paid in 1923 was for the lumber; and that the realty was not sold until the following year. To sustain this contention it introduced several witnesses who were instrumental in drawing up the contract. They testified that they agreed upon $30,000 for the realty, the mill and equipment, which included the water rights, and that they estimated the personalty, which included the lumber, to be about $35,000. There is also some testimony that they considered the amount of $35,000 paid in 1923 as payment for the personalty. But we can not agree that this establishes the petitioners' theory that there were two separate and distinct sales. The contract itself provides for a sale of personalty and realty for a lump sum and at the same time. The bill of sale and the deed were delivered in escrow and neither of them was released until the payment of the final purchase price. The vendee went into possession of both the realty and the personalty. We think that this evidence shows that this was a single contract for the sale of both realty and personalty.

The petitioners further contend that, even if this were a single sale, the action of the respondent in including the amount in gross income for 1923 was erroneous, since, under the law of Washington, no title, legal or equitable, passed to the vendee until the deed was delivered in 1924. Counsel for the petitioners cites a number of Washington cases for the proposition that where there is a forfeiture clause in a contract no title, legal or equitable, passes to the vendee until the final payment and delivery of the deed.

A case holding that this question is not necessarily governed by the state law as to the passage of title is that of the *Birdneck Realty Corporation*, 25 B. T. A. 1084. In that case the taxpayer corporation was engaged in subdividing and selling lots. The lots were disposed of under contracts providing for a down payment by the purchaser upon signing the contract, the remainder payable in installments represented by promissory notes. The contract provided that upon default in payment the seller might at its option either cancel the contract, in which event all amounts already paid should be retained by it, or declare the unpaid installments due and payable, and it further provided: " It is understood that the party of the first part acquires neither an equitable or legal title to the property until the same shall have been paid for in full." The purchaser under the contract did not take possession of the property. The taxpayer vendor contended that since under State law (Virginia) there was no sale in the year the contract was entered into, it derived no profit in that year. We held that under such a contract gain was realized in the year the contract was executed and the down payment made, and, after discussing the state cases relied upon by the petitioner, said:

But we are of opinion that the question whether the transactions were sales is not determinative of income under these contracts. During the taxable period petitioner received under its contracts cash sums over which it acquired absolute ownership and control. While its obligation to transfer title in the lot was dependent upon payment of all installments of the purchase price, its right to the cash installments as paid was absolute and unconditional. They were not held in trust nor subject to any obligation to return in case the contractual obligations were not fulfilled. Under the statutory definition of gross income in section 213 (a), they clearly constituted income derived from dealings in property. Cf. *Charles J. Derbes*, 24 B. T. A. 276; *Lucas v. North Texas Lumber Co.*, 281 U. S. 11.

\* \* \* \* \* \* \*

\* \* \* *In this proceeding, however, a default gave petitioner the option to declare the unpaid remainder due and payable.* The liability for the full price, therefore, became absolute at the signing of the instrument.

\* \* \* \* \* \* \*

But in respect of those transactions not taxable on the installment basis, it may happen that the total anticipated profit, on which petitioner is here taxed, exceeds the amount of the cash payment received. In such a situation it can not be said, as above, that petitioner is taxed only on cash paid, which upon receipt became its absolute property. *But together with the cash petitioner likewise received the unconditional obligation of the vendee to pay the remaining amount of the purchase price; and, absent evidence to the contrary, the respondent's determination that such obligations were worth no less than par at the time of receipt is sustained.* [Italics supplied.]

The contract in the instant proceeding provides that the seller may, at its option, declare the contract forfeited and the buyer shall

forfeit to the seller all payments made thereunder, but makes no provision for the balance of the purchase price immediately becoming due and payable. However, as in the *Birdneck* case, the contract is voidable by the vendor and not by the vendee. It should be noted that the contract of sale was entered into in October, 1923, possession of the property delivered to the vendee, and a substantial part of the purchase price—in fact approximately 50 per cent—was paid in that year and the bill of sale and deed were executed and delivered to the escrow agent to be retained until the final payment of the purchase price. Thus, the seller had done all in its power to carry out the contract and nothing remained for it to do but to receive the payments on the purchase price or to declare the contract forfeited, if it so desired, in the event of failure of the purchaser to make the payments when due. We do not believe the fact that the contract does not provide that the unpaid balance shall become due and payable is material, in view of the facts present in this case which we have already mentioned, and which indicate a completed sale in the year the contract was entered into.

In the case of *Commissioner* v. *Moir*, 45 Fed. (2d) 356, a contract in writing was entered into in July, 1920, providing that $10,000 be paid at once and when the title was satisfactory, $40,000 more was to be paid, whereupon the seller was to deposit in escrow a deed and, upon payment of the balance of the purchase price one year thereafter, the deed was to be delivered to the purchaser. The contract provided that in case the purchaser failed to carry out his contract the seller might retain as liquidated damages all the money paid and the contract would then be null and void. The balance of the purchase price was paid in 1921 and the papers in escrow were then delivered to the purchaser in that year. The court held that the sale took place in 1920.

In the *Moir* case the court did not discuss the question of when title passed, either legal or equitable, but based the decision on the theory that there was a completed transaction in the year that the sale was entered into and hence the total profit accrued in that year. That case arose in Illinois. We do not believe that as far as Federal taxation is concerned the question of when title passes by state law should govern in this proceeding. It is not a question of a determination of property rights, but a practical one of when a taxpayer receives income.

There are a number of cases which hold that where a contract of sale is entered into and part of the purchase price paid, the deed executed and all that remains for the vendor to do is to receive the purchase money, the sale is completed for income-tax purposes in the year the contract is entered into. See *Davidson & Case Lumber*

*Co.* v. *Motter*, 14 Fed. (2d) 137; *J. T. Pittard*, 5 B. T. A. 929; *Seletha O. Thompson*, 9 B. T. A. 1342; *Old Farmers Oil Co.*, 12 B. T. A. 203; *Grace Harbor Lumber Co.*, 14 B. T. A. 996; *Bailey et al.*, 18 B. T. A. 105; *Federal Development Co.*, 18 B. T. A. 971; *Harris Trust & Savings Bank*, 24 B. T. A. 498; and *W. H. Hay*, 25 B. T. A. 96. While none of these cases is exactly similar to the instant proceeding, we believe that from the principles laid down therein we are justified in concluding that for income-tax purposes the sale was completed in 1923, regardless of the fact that title had not passed to the vendee.

In reaching our conclusion we have not overlooked the decision of this Board in the case of *E. K. Wood Lumber Co.*, 25 B. T. A. 1013, which in Docket No. 23605 involved two sales of timber in the State of Washington. In that case contracts of sale were entered into on April 21 and July 12, 1920, respectively, and about one-fifth of the purchase price was paid in that year, the remainder being payable in installments evidenced by promissory notes. We there held, see pp. 1020, 1021, 1028–1030, that there was no sale in 1920 under either of the contracts such as to render the petitioner liable to tax in that year on the total anticipated profit to be derived from the contracts. While the terms of the contracts are not set forth, it appears that no deed or other conveyance was executed and that the vendor retained control of the property, the vendee having a mere license thereunder to cut timber. The situation in the present proceeding is clearly distinguishable.

The respondent has included the entire amount of the profit in the Company's gross income for 1923. There is no evidence as to the basis upon which he computed the profit or whether the deferred payments under the contract had a readily realizable market value. In such a situation we must sustain the action of the respondent in including the entire profit in income for 1923.

*Judgment will be entered for the respondent.*