EDGAR STANTON AND JOSEPH C. BELDEN, EXECUTORS OF THE ESTATE OF GEORGE CAMPBELL REW, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 41404. Promulgated April 28, 1936.

452

*Charles H. Watson, Esq.*, and *Joseph McCormack, Esq.*, for the petitioners.

*Elden McFarland, Esq.*, and *Maurice Parshall, Esq.*, for the respondent.

## OPINION.

MELLOTT: Petitioners contend that their decedent, Rew, consummated an exchange on December 31, 1923, of his preferred stock for bonds and securities having no readily realizable market value; that the exchange was not completed in 1924, and that respondent erred in determining that Rew realized a taxable gain in that year. In the alternative they contend that even should we decide that the exchange was completed in 1924, Rew did not realize a taxable gain as the transaction was completed before the passage of the Revenue Act of 1924 and the bonds and securities acquired did not have a readily realizable market value.

The Revenue Act of 1921 provides that on an exchange of property for other property no gain shall be recognized unless the property received in exchange has a readily realizable market value. Subsequent acts, including the 1924 Act, require the recognition of gain where the property acquired in the exchange had a fair market value at the time of the exchange. We show in the margin the pertinent provisions of the Revenue Acts of 1921 and 1924 and the regulasions thereunder.[1]

The first question we must decide is whether or not Rew, on December 31, 1923, consummated an exchange of his stock for bonds

[1] The term "gross income" includes gains, profits and income derived from * * * sales or dealings in property. [Sec. 213 (a) of 1921 and 1924 Acts.]

The time as of which any item of gross income or any deduction is to be accounted for must be determined in the light of the fundamental rule that the computation shall be made in such a manner as clearly reflects the taxpayer's income. [Regulations 62, art. 22, Act of 1921; Regulations 65, art. 22, Act of 1924.]

Gains, profits and income are to be included in the gross income for the taxable year in which they are received by the taxpayer, unless they are included when they accrue to him in accordance with the approved method of accounting followed by him. [Regulations 62, art. 51, Act of 1921; Regulations 65, art. 50, Act of 1924.]

For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; * * * [Sec. 202 (c), Act of 1921.]

Except as hereinafter provided in this section, the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in subdivision (a) or (b) of section 204, and the loss shall be the excess of such basis over the amount realized. [Sec. 202 (a), Act of 1924.]

The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. [Sec. 202 (c), Act of 1924.]

This title [Title II, which includes section 202] shall take effect as of Jan. 1, 1924. [Sec. 283, Act of 1924.]

or securities having no readily realizable market value. Petitioners argue that Rew, by endorsing and delivering his certificate of stock to Peabody, performed every act required of him under the terms of the agreement entered into on December 31, 1923, and that it necessarily follows that the exchange was complete on that date. We do not agree with this contention. It is not clear whether petitioners are claiming that Rew received in the exchange the three blocks of Garland, Orrington, and Conn bonds or the 30 different securities listed in the schedule attached to the exchange agreement. Upon brief they argue the former, while the petition indicates an evident reliance upon the latter. It is obvious that Peabody did not give, or intend to give, Rew both blocks of bonds in exchange for his stock, and apparently petitioners make no such contention. In order to determine the above question, we must decide which, if either, of the blocks of bonds were received in the exchange. We shall discuss first petitioner's contention with reference to the three blocks of bonds.

The evidence discloses that Rew desired to exchange his stock on December 31, 1923, for a diversified group of securities having no readily realizable market value, which would give him a 7 percent return upon the amount invested. His attorney assured him that such a transaction would not be subject to Federal income tax in 1923 but might be taxable in 1924. When he attempted to consummate the exchange on December 31, 1923, he learned that the mechanics incident to the delivery of such a large group of securities could not be completed on that day, which was practically a holiday. Having endorsed his certificate of stock in blank and turned it over to Peabody, he desired to be put in a protected position, and Peabody, therefore, to secure the performance of its part of the agreement, which contemplated that it should ultimately transfer to him the diversified group of bonds, agreed to transfer to his safekeeping account the three blocks of bonds.

The transaction was entered on the books of Peabody as an exchange of Rew's stock for the three blocks of Garland, Orrington, and Conn bonds, and he was given a copy of an invoice or journal voucher listing both the stock and bonds and containing the phrase that it was "to record the transfer to George Campbell Rew of [three blocks of bonds, listing them] in exchange for 6,150 shares of Calumet Baking Powder Company first preferred stock." But bookkeeping entries are only evidential and are not conclusive. *Doyle v. Mitchell Brothers Co.*, 247 U. S. 179. Our decision must rest upon the actual facts as shown by all the evidence. We shall briefly allude to some of such facts, in addition to those just mentioned.

An examination of the amended petition discloses that no mention is made in it of any exchange of Rew's stock for the three blocks of bonds. Petitioners assign as error "the failure of the Commissioner to find that George Campbell Rew on December 31, 1923, received in exchange for 6,150 shares of preferred stock of Calumet Baking Powder Company the securities named hereinbelow, * * *." (The securities named are the 30 different blocks of bonds received by decedent on January 15, 1924.) Moreover, the record fails to disclose any agreement between Rew and Peabody providing for the exchange of his stock for the three blocks of bonds. On the contrary, it discloses that such bonds were intended merely as security for the performance by Peabody of its part of the agreement of December 31, and there was a definite understanding that Rew could not retain such bonds but was bound to return them to Peabody when he received the diversified group of bonds designated in the original schedule, or those which it was found necessary to substitute therefor.

No manual delivery of the three blocks of bonds was made to Rew during the period between December 31, 1923, and January 15, 1924, and none were actually set aside or deposited in a separate compartment in safekeeping for him. However, during such period, Peabody had in its inventory a number of the bonds or interim certificates of each of said issues in excess of the amount which it agreed to deposit in safekeeping for Rew.

We are convinced that there was not an exchange of Rew's stock for the three blocks of bonds on December 31, 1923. There was no "reciprocal conveyance of the thing given, and of the thing received in exchange"; (*Preston* v. *Keene*, 39 U. S. (14 Pet.) 132, 137); no "mutual transfer of * * * property for property other than money." (23 C. J. 184, *et sequa* and cases cited.) Nor did the parties intend that title should pass (55 C. J. 529, *et sequa*) and that each should be both a vendor and a vendee. The evidence referred to above indicates that the transaction was more in the nature of a pledge, Rew having constructive possession, but not title, of property owned by Peabody, as security for the performance of its obligation to make delivery of the 30 blocks of bonds.

Even if we should hold that an exchange of the stock for the three blocks of bonds was consummated on December 31, 1923, we could not set aside the deficiency. Had such an exchange taken place, the three blocks of bonds, having no readily realizable market value, would have had in Rew's hands, the same basis for determining gain or loss upon sale or other disposition that the shares of stock had, viz., $57,370.27. If they were exchanged, on January 15, 1924—and under this theory we would of necessity have to give full force and

effect to Exhibit D which shows such exchange—for the diversified group of 30 blocks of securities having a fair market value of $660,-272.50, a tax upon the difference between such basis and such fair market value would have been due.

We shall now consider the question of whether or not the decedent on December 31, 1923, exchanged his stock for the securities listed on the schedule attached to the original agreement.

It is unnecessary to repeat the facts in detail. Schedule A now attached to petitioners' Exhibit 1, lists the 30 securities which were delivered to Rew on or about January 15, 1924. This schedule, however, was not identified as being the schedule originally attached to the agreement at the time it was signed. It can not be determined from the evidence just what bonds or securities were listed on the original schedule, for neither it nor a copy could be located. Apparently, however, the original schedule contained block designations of approximately 30 different kinds of securities which Rew would accept in exchange for his stock. No details as to numbers, maturities, and amounts of these securities were included therein. Between December 31 and January 15 the list contained on the original schedule was modified in accordance with negotiations carried on between Rew and Peabody. The evidence clearly indicates that Rew did not know on December 31 exactly what securities he was to receive, and they were not distinguishable on that date from other securities in the vaults of Peabody. In *Preston* v. *Keene*, *supra*, the Supreme Court defined an exchange in the following language:

An exchange is an executed contract; it operates, *per se*, as a reciprocal conveyance of the thing given, and of the thing received in exchange. * * * It enters into the very idea of the exchange, that the thing given or taken in exchange shall be specific, and so distinguishable from other things of the like kind as to be clearly known and identifiable.

We are convinced that on December 31, 1923, the diversified group of securities Rew was to receive for his stock could not be identified either by the decedent or Peabody. Under such circumstances, there could be no "reciprocal conveyance of the thing given, and of the thing received in exchange." We therefore conclude that the contract remained executory; title to the securities was not transferred to the decedent; and the exchange was not completed on that date. Cf. *Ellis & Myers Lumber Co.* v. *Hubbard*, 123 Va. 481, 493; 96 S. E. 754; sec. 17, Uniform Sales Act (enacted in Illinois in 1915); Williston on Sales, 2d Ed., vol. 1, p. 520; 55 C. J. 541, 532.

Even assuming, but not admitting, that the securities the decedent was to receive in exchange for his stock were identifiable and distinguishable from other securities of a like kind in the possession of Peabody on December 31, 1923, we would still have to decide

that no exchange was completed for tax purposes until 1924. The respondent determined that the exchange was completed in 1924 when the decedent actually received the group of 30 securities. In order to overcome the prima facie correctness of this determination, the burden was on petitioners to show either that the securities were received in 1923, or that decedent was on the accrual basis and his right to receive them accrued in 1923. The evidence clearly shows that the securities were actually received in 1924, but no evidence was introduced showing that decedent kept his books on the accrual basis, even though this matter was called to the attention of petitioners' counsel at the hearing. We must therefore uphold respondent's determination that the exchange was completed, and taxable, if at all, in the year 1924 when the securities were received, as petitioners failed to sustain their burden of proving that decedent kept his books and filed his returns on the accrual basis. *Helvering* v. *Nibley-Mimnaugh Lumber Co.*, 70 Fed. (2d) 843.

In support of their contentions that an exchange was completed on December 31, 1923, petitioners cite and rely upon the following cases, among others: *Brunton* v. *Commissioner*, 42 Fed. (2d) 81, affirming 15 B. T. A. 348; certiorari denied, 282 U. S. 889; *Dahlinger* v. *Commissioner*, 51 Fed. (2d) 662, affirming 20 B. T. A. 176; certiorari denied, 284 U. S. 673; *Eavenson* v. *Commissioner*, 51 Fed. (2d) 664, affirming 20 B. T. A. 238; certiorari denied, 284 U. S. 672; *Commissioner* v. *Swift*, 54 Fed. (2d) 746, affirming 20 B. T. A. 1099; *Davidson & Case Lumber Co.* v. *Motter*, 14 Fed. (2d) 137 (Dist. Ct. Kan.); *Southern California Rock & Gravel Co.*, 26 B. T. A. 296; *Dakota Creek Lumber & Shingle Co.*, 26 B. T. A. 940; *Nibley-Mimnaugh Lumber Co.*, 26 B. T. A. 978; affd., 70 Fed. (2d) 843; *Standard Lumber Co.*, 28 B. T. A. 352. We have carefully examined these cases. Most of them involve sales of property, in which the subject matter was sufficiently specified and identified and the purchase price agreed upon in the years in which the sales were held to be completed for tax purposes. In determining the question presented, this Board and the courts took into consideration the time when the dominion, control, burdens and benefits of ownership passed to the purchasers and the methods of accounting used by the taxpayers. The cases cited are in our opinion distinguishable from the instant case on their facts, and do not support petitioners' conclusion that the exchange here involved was consummated on December 31, 1923.

Having determined that the exchange was completed on or about January 15, 1924, when the decedent received the group of 30 securities from Peabody, it becomes necessary to decide petitioners' alternative contention that the amount of the taxable gain, if any, real-

ized by the decedent is governed by the Revenue Act of 1921 (Section 202 (c), *supra*), and not by the Revenue Act of 1924 (sections 202 (a) and (c), *supra*). This contention is predicated upon the fact that the Revenue Act of 1924 was not approved until June 2, 1924. Section 283 of the act, however, provides that those sections with which we are here concerned shall take effect as of January 1, 1924. The taxable gain to be recognized in the instant proceeding is therefore governed by the provisions of the Revenue Act of 1924.

There is no merit in the argument made by petitioners in their reply brief that a statute approved on June 2, 1924, and retroactively taxing a transaction which occurred in January of that year is unconstitutional and in conflict with the Fifth Amendment. The cited cases (*Dobbins* v. *Los. Angeles*, 195 U. S. 223; *Blodgett* v. *Holden*, 275 U. S. 142; *Untermyer* v. *Anderson*, 276 U. S. 440; and *Nichols* v. *Coolidge*, 274 U. S. 531) are not applicable here. With the exception of *Dobbins* v. *Los Angeles*, *supra*, in which the retroactive application of a taxing statute is not involved, they merely enunciate the rule that Congress does not have the power to impose a charge upon a donor because of gifts fully consummated before a taxing statute was enacted. This rule does not apply to income taxes. The revenue acts, beginning with the Act of 1913, and including the War Revenue Act of 1918, have consistently provided for the taxation of income realized from transactions which took place prior to their passage. *John S. Garvan*, 23 B. T. A. 817. It is now well settled that such provisions, although retroactive in scope, are constitutional. *Brushaber* v. *Union Pacific Railroad Co.*, 240 U. S. 1; *Fesler* v. *Commissioner*, 38 Fed. (2d) 155; *Phipps* v. *Bowers*, 49 Fed. (2d) 996, affirming 46 Fed. (2d) 164; certiorari denied, 284 U. S. 641.

The Revenue Act of 1924 provides that the gain from the sale or other disposition of property acquired prior to March 1, 1913, shall be the excess of the amount realized, over the cost or March 1, 1913, value, whichever is greater. (Secs. 202 (a) and 204 (b) of the 1924 Act.) It also provides that the amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. (Sec. 202 (c), 1924 Act.) No money having been received in the exchange here under consideration, the amount realized by the decedent was the fair market value of the securities which he received on January 15, 1924.

We have found as a fact that the fair market value of the securities received by the decedent on January 15, 1924, including accrued interest to that date, was $660,272.50. While Lawrence G. Wilson, an auditor of Peabody, testified as a witness for the petitioners that the securities received by decedent on January 15, 1924, were gen-

erally sold to the public by Peabody at par, plus accrued interest, or $678,030.70, and that this price represented their fair value, we have found the fair market value to be the amount Peabody charged the decedent for them.

The respondent determined the basis for gain or loss on decedent's preferred stock was $57,370.27, its March 1, 1913, value. No evidence was introduced by petitioners which would warrant our disturbing this determination. In return for the securities received, decedent gave Peabody his stock and accrued dividends in the amount of $10,762.50. We find therefore that the taxable gain realized by the decedent was the difference between $660,272.50 and $68,132.77 ($57,370.27+$10,762.50). We approve the respondent's determination that the decedent received during the period January 1, 1924, to January 10, 1924, unreported dividends on his preferred stock aggregating $10,762.50.

*Judgment will be entered under Rule 50.*