JOHN F. McCABE AND EDNA M. McCABE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McCabe v. Commissioner
Docket No. 26159-82.
United States Tax Court
T.C. Memo 1985-202; 1985 Tax Ct. Memo LEXIS 431; 49 T.C.M. (CCH) 1336; T.C.M. (RIA) 85202; April 25, 1985. John F. McCabe, pro se. Gary A. Benford, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined a deficiency in Federal income tax against petitioners for the taxable year ended December 31, 1980, in the amount of $2,979. After concessions, [1] the issues for decision are: (1) whether petitioners are entitled to claimed miscellaneous itemized deductions; (2) whether petitioners are entitled to any employee business expense deductions; (3) whether petitioners are entitled to any moving expense deductions; and (4) whether petitioner John F. McCabe was an employee or was an independent contractor. [2]
*433 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. John F. McCabe (hereinafter "John" or "petitioner") and Edna M. McCabe (hereinafter "Edna") were husband and wife and residents of Albuquerque, New Mexico, at the time of filing their timely petition in this Court. John and Edna (hereinafter referred to, collectively, as "petitioners") timely filed a joint Federal income tax return for the taxable year ended December 31, 1980. Petitioners filed amended returns for the year 1980 on March 10, 1983 and September 19, 1983. [3]
I Prior to his resignation, effective April 30, 1980, petitioner was employed as a stenographic reporter by the New York State Division *434 of Parole. Petitioner's employment required that he travel to numerous locations within New York State. All of petitioner's trips required that he stay overnight; John used his personal automobile to drive from one location to another. Petitioner used his personal car, a 1978 Plymouth-Horizon, exclusively for business purposes. Petitioner claimed, and was allowed, an investment tax credit with respect to his personal car in a return for a prior year. Petitioner was not provided with an office by his employer. In February 1980, petitioner received, pursuant to his prior request, a list of available employment positions from the National Shorthand Reporters Association. Petitioner decided to pursue employment opportunities as a stenographic reporter in Phoenix, Arizona, and Albuquerque, New Mexico. In April 1980, petitioners drove to thoenix, Arizona, in order for John to be interviewed for the position of stenographic reporter. John would not accept employment in Phoenix, Arizona, because Edna could not tolerate the climate. Petitioners then drove to Albuquerque, New Mexico. As a result of this trip, petitioner secured employment with Dearnley, Meier & Associates Reporting *435 Service (hereinafter "Dearnley, Meier"), in Albuquerque. John incurred Job-hunting expenses in the amount of $1,080. [4] As a condition for employment with Dearnley, Meier, petitioner was required to take the Certified Shorthand Reporters examination (hereinafter "CSR"); passing the CSR is a requirement in order to become a certified shorthand reporter in New Mexico. The cost of taking the examination was $50. Petitioners thereafter returned to Albany, New York, from Albuquerque, New Mexico. Petitioner arrived in Albuquerque to start his job with Dearnley, Meier, on April 29, 1980. Edna was to follow on April 30, 1980.John called Edna on April 30, 1980, to inquire whether she was making arrangements to leave for New Mexico. Upon learning that Edna was ill, petitioner returned to Albany, taking an unfinished work assignment in New Mexico with him. Petitioner completed this work in Albany. Petitioner continued to work, on a temporary basis, for the Division of Parole upon his return to New York. Petitioners moved to Albuquerque, New Mexico around June 23, 1980. Petitioners rented *436 a two-bedroom apartment for the four-month period beginning June 24, 1980, and ending October 23, 1980. On October 29, 1980, petitioners purchased a five-room house in Albuquerque, New Mexico, for $46,500. During November and December 1980, John used one of the rooms as an office, exclusively. John did all the work relating to his employment as a stenographic reporter in his home-office. Petitioner had the following furniture and equipment in the aforesaid office: (1) a copier; (2) three desks; (3) two typewriters; and (4) all of the records used by petitioner in the performance of his work. Petitioners claimed miscellaneous deductions in their 1980 return, as follows: Union dues
$84.00
Notary license
10.00
Notary stamp
15.00
Professional licensing
165.00
Form 2106, Business Expenses
924.72
Depreciation, home in New Mexico,
2 months, Form 4562 [5]
138.88
Total
$1,337.60
The portion of the miscellaneous deductions from Form 2106, Employee *437 Business Expenses, consisted of the following: Depreciation
$374.72
Heat, etc.
85.00
Telephone
65.00
Business Machines Depreciation
& Office Equipment
100.00
Supplies
100.00
Mailing
200.00
Total
$924.72
All the claimed deduction was disallowed by respondent. Petitioners incurred the following expenses, deductible as miscellaneous itemized deductions, in 1980: Union dues
$3.25
Notary license
10.00
Notary stamp
13.00
Employee Business Expenses [6]
209.65
Total
$235.90
II. Petitioners claimed a deduction for John's expenses for *438 travel away from home and transportation in connection with the performance by him of services as an employee in the amount of $7,681.54. [7]
Respondent disallowed the amounts claimed in his statutory notice of deficiency. John incurred ordinary and necessary traveling expenses (including meals and lodging) while away from home and transportation expenses in the amount of $1,171.38, as follows: Meals & lodging
$1,003.50 Tolls
15.90 Parking Fees
52.42 Automobile expenses-standard method [8]
1,983.46 Total employee business expense
$3,055.28 Less: Employer's reimbursement
(1,883.90)
Employee business expenses
$1,171.38 *439 III Petitioners claimed moving expenses in the amount of $3,550 in their original income tax return. [9]
Respondent disallowed the deduction in full. Petitioners incurred moving expenses in the amount of $436.49. [10]
IV. Petitioner continued to work for Dearnley, Meier *440 after his final trip to Albuquerque on June 23, 1980 and until the end of the year. Edna also secured employment with Dearnley, Meier as a clerk. Forms W-2, Wage and Tax Statements, were issued by Dearnley, Meier to both petitioners. The form W-2 issued to John reflects that wages in the amount of $10,050 were paid during 1980, and that $1,343.10, $616.09, and $134.31 were withheld for Federal income tax, FICA tax, and state income tax, respectively. Petitioners included the $10,050 received from Dearnley, Meier as wages in their original return, Form 1040, but recharacterized the aforementioned $10,050 as self-employment income in the amended returns, Form 1040X, filed on March 10, 1983 and September 19, 1983, respectively. [11]
OPINION Preliminary matters:
Petitioners raise some procedural arguments on brief. Petitioners contend that: (a) respondent unlawfully and arbitrarily deprived them of an audit; (b) the notice of deficiency *441 was premature and not in accordance with the Secretary of the Treasury's Rules of Procedure, and that respondent's methods were coercive, forcing petitioners to file a petition with this Court; (c) as a result of their being forced to file the petition herein, this Court does not have jurisdiction, (d) the notice of deficiency is too ambiguous for petitioners to answer, and that they were unlawfully required by this Court to answer to each item, arguing, in support of their contention, that respondent did not cite any code provisions or sections of the regulations in the statutory notice of deficiency; and (e) this Court should consider the amended returns filed by them on March 10, 1983, and September 19, 1983. If the Commissioner determines that a deficiency exists with respect to an individual's income tax, he may issue a notice of deficiency to the taxpayer. Section 6212(a). [12] The taxpayer may then petition this Court for a redetermination of the deficiency. Section 6213(a). Upon the filing of the petition in accordance with the law and our rules of procedure, we acquire jurisdiction. Main-Hammond Land Trust v. Commissioner,17 T.C. 942 (1951), affd. *442 200 F.2d 308 (6th Cir. 1952); Southern California Rock & Gravel Co. v. Commissioner,26 B.T.A. 296 (1932); Duggan v. Commissioner,18 B.T.A. 608 (1930). Such jurisdiction remains unimpaired until we have decided the controversy. Duggan v. Commissioner,21 B.T.A. 740 (1930). The taxpayer may not unilaterally oust the Court from jurisdiction. Main-Hammond Land Trust v. Commissioner,supra.[13]
As to petitioners' contention that they were unlawfully denied an audit, it is clear that, except in rare and unusual circumstances, this Court will not look behind the statutory notice of deficiency to examine the evidence used, the propriety of respondent's motives, the administrative policy or procedure followed in making the determination. Riland v. Commissioner,79 T.C. 185 (1982); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324 (1974). *443 The underlying rationale for the foregoing is that a trial before this Court is a de novo proceeding. Our determination of a taxpayer's tax liability must be based on the merits of the case and not on any previous record developed at the administrative level. Greenberg's Express, Inc. v. Commissioner,supra;O'Dwyer v. Commissioner,28 T.C. 698 (1957), affd. 266 F.2d 575 (4th Cir. 1959), cert. denied 361 U.S. 862 (1959). See Boyer v. Commissioner,69 T.C. 521 (1977). Petitioners' argument that the statutory notice of deficiency is ambiguous is totally without merit. Respondent clearly stated, in his notice of deficiency, his grounds for disallowing petitioners' deductions. Respondent's failure to cite any sections of the Internal Revenue Code does not invalidate the notice of deficiency. Jarvis v. Commissioner,78 T.C. 646 (1982). The cases cited by petitioners -- Sorin v. Commissioner,29 T.C. 959 (1958), affd. 271 F.2d 741 (2d Cir. 1959); Sidney v. Commissioner,273 F.2d 928 (2d Cir. 1960), affg. 30 T.C. 1155 (1958); *444 Payne v. Commissioner,30 T.C. 1044 (1958), affd. 268 F.2d 617 (5th Cir. 1959) -- are inapposite; the case herein does not involve a situation where respondent is relying upon a Code section other than a specific section cited in the deficiency notice. Finally, the Commissioner has discretion to accept or reject amended returns filed after the due date; this is a matter of internal administration. Kunkel & Co. v. Commissioner,3 B.T.A. 133 (1925). We have admitted the amended returns in evidence as a statement of petitioner's present position, but the amended returns do not affect petitioners' burden to show error in the notice of deficiency, and are no more probative of the facts therein stated than the original return itself. Tax returns are not self-proving. Halle v. Commissioner,7 T.C. 245 (1946), affd. 175 F.2d 500 (2d Cir. 1949), cert. denied 338 U.S. 949 (1950). Issue 1: Miscellaneous itemized deductions and
Issue 2: Employee business expenses deduction
Petitioners claimed miscellaneous deductions in their return for the taxable year ended December 31, 1980, as *445 follows: Union dues
$ 84.00
Notary license
10.00
Notary stamp
15.00
Professional licensing
165.00
Form 2106, Employee
Business Expenses
924.72
Depreciation, home in
New Mexico, 2 months,
Form 4562
138.88
$1,337.60
The portion of the miscellaneous deductions from Form 2106, Employee Business Expenses, involved the alleged use of one of the rooms in petitioners' house as a home-office by John, as follows: Depreciation
$374.72
Heat, etc.
85.00
Telephone
65.00
Business Machines Depreciation
100.00
& Office Equipment
Supplies
100.00
Mailing
200.00
$924.72
Respondent disallowed all of the aforementioned deductions in his statutory notice of deficiency on the ground that petitioners had failed to establish: (1) that the expenses were paid or incurred during the taxable year, and (2) that the expenses were ordinary and necessary. Respondent now concedes that petitioners are entitled to the following miscellaneous itemized deductions: Union dues
$ 3.25
Notary license
10.00
Notary seal
13.00
Home office expense (supplies)
48.43
Total
$74.68
As to the $165 claimed by petitioners as professional *446 licensing, respondent contends that the payment of a fee is a prerequisite to taking the New Mexico CSR examination; thus, the expenditure was capital in nature and nondeductible in the year of payment in the absence of proof that the benefit of John's license did not extend beyond the year at issue. Respondent also contends that petitioners have failed to prove that they used a part of their New York and New Mexico homes regularly and exclusively for business purposes; thus, no home-office expenses, other than the $48.43 conceded by respondent, are allowable. Petitioners contend that the disallowance of the above-mentioned amounts was in error. In support of their claim that they are entitled to a deduction in the amount of $84 for union dues, petitioners presented a form, entitled "Employee's Statement of Salary and Deductions" for an undetermined period ending March 12, 1980, issued to John by the New York State Division of Parole. The aforesaid form evidences that $3.25 were deducted from petitioner's salary. The said deduction is explained by a reference to a code 201. The explanation of said code 201 is illegible; it is, thus, impossible to determine the concept for which *447 the $3.25 were deducted. Petitioners have failed to prove that they are entitled to deduct union dues in excess of the $3.25 allowed by respondent. [14]
Petitioners submitted a receipt, in the amount of $13.52 -- $13 for a notary seal, plus $ .52 of tax -- in support of their deduction for a notary seal, which was not objected to, and we have accepted it; thus, petitioners *448 are entitled to deduct $13. [15]
The claimed deduction of $165 for "professional licensing" is supported by a purchaser's receipt of a bank money order in the amount of $50. It appears that payment of this fee was a prerequisite to taking the New Mexico CSR examination, which in turn was a prerequisite to becoming a certified shorthand reporter.[16] The benefits derived from certification as a shorthand reporter in New Mexico will be enjoyed by petitioner over a comparatively lengthy period, certainly greater than one year in length. Clearly, this expenditure of $50 was capital in nature and not deductible in the year of payment. Ryman v. Commissioner,51 T.C. 799 (1969); Avery v. Commissioner,419 F. Supp. 105 (N.D. Ia. 1976). Petitioners deducted home office expenses in the amount of $924.72, [17] and $138.88 of depreciation for their New Mexico home for the same concept. John testified that he used one of the five rooms of his house in Albuquerque, *449 New Mexico, as an office. John also stated that he did all his work in this office, and that the room was used exclusively as an office. John had a copier, three desks, two typewriters and all the records which petitioner uses in the aforesaid room.John was not provided with an office by his employer. [18]
From the evidence before us, we are satisfied that John used one of the five rooms in his Albuquerque house exclusively as an office, on a regular basis, and that the said office was his principal place of business. We are also satisfied that the use of said room exclusively as an office was for the convenience of John's employer, [19]Dearnley, Meier. Petitioners are accordingly entitled to deduct $50.05 which represents the expenses allocable to the use of this room as an office by *450 petitioner; this amount is deductible as a miscellaneous deduction on line 31 of Schedule A, and not under line 24 of Form 1040 as contended by petitioners. [20]
Petitioners are not entitled to depreciation deductions with respect to the Albuquerque house; [21] no allocation of the purchase price was made between the land and the house, thus, it is impossible to determine the depreciable basis of the house. [22]
*451 Petitioners are further entitled to deduct $155.71 for equipment and supplies, and $3.89 for shipping expenses. Petitioners claimed travel away from home and transportation expenses in the amount of $7,681.54. [23] Respondent determined in his statutory notice of deficiency that petitioners had failed to establish that payment for the claimed expenses was actually made during the taxable year, and that the expenses were ordinary and necessary to their business or profession, and disallowed the claimed deduction. On brief, respondent now concedes that petitioners are entitled to deduct $843.95 as travel away from home and transportation expenses, determined as follows: Expenses incurred in connection with
$1,647.85 petitioner's employment with the
New York Division of Parole [24]
Expenses incurred in seeking
1,080.00 employment in New Mexico [25]
Gross Employee business expenses
$2,727.85 Less: Employer's reimbursement
(1,883.90)
Net Employee business expenses
$ 843.95 *452 All deductions from gross income, whether personal or business, must be substantiated pursuant to section 6001. Business expenses are subject to the further substantiation requirements of sections 162 and 274. On the record before us, we are satisfied that petitioners have substantiated travel away from home and transportation expenses in the amount of $1,171.38. Petitioners claimed additional automobile expenses, on Form 2106, with respect to a 1969 Ford van. The record is devoid of any evidence as to petitioner's use of any vehicle besides the 1978 Plymouth, for business purposes. Accordingly, petitioners are not entitled to deduct any expenses relating to the 1969 Ford van. At trial, petitioners claimed entitlement to an investment tax credit with respect to their automobile, a 1978 Plymouth-Horizon. This matter was not properly pleaded by petitioners. It is a well established principle that this Court will not consider issues that have not been pleaded. Rollert Residuary Trust v. Commissioner,80 T.C. 619 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Markwardt v. Commissioner,64 T.C. 989 (1975); Estate of Mandels v. Commissioner,64 T.C. 61 (1975). *453 Since petitioners failed to plead this new matter and since we conclude that respondent had no fair notice of such matter, Rule 31(a), we do not address this issue. [26] See Seligman v. Commissioner,84 T.C. 191 (1985). Petitioners are entitled to a deduction for job-hunting expenses in the amount of $1,080. [27]A deduction for expenses that are directly related to a search for employment in the same trade or business is allowable under section 162(a). Cremona v. Commissioner,58 T.C. 219 (1972); Kenfield v. Commissioner,54 T.C. 1197 (1970); Primuth v. Commissioner,54 T.C. 374 (1970). Issue 3: Moving expenses
Petitioners deducted moving expenses in the amount of $3,550. Respondent determined in his statutory notice of deficiency that petitioners had failed to prove that the aforesaid amounts were moving expenses and that they had been paid by petitioners and *454 disallowed the deduction. On brief, respondent concedes that petitioners are entitled to a deduction in the total amount of $436.49, as follows: Travel expense [28]
$197.49
Temporary living expense [29]
239.00
Total
$436.49
On the record before us, we determine that petitioners are entitled to a deduction in the amount of $436.49 for moving expenses. Issue 4: John's employee status
The final issue for us to determine is whether John was an employee of Dearnley, Meier or an independent contractor. [30]
*455 Petitioners contend that upon their moving to Albuquerque, New Mexico, in June 1980, John became an independent contractor. [31] In support of their contention, petitioners allege that John entered into a contract with Dearnley, Meier. Respondent contends that petitioners properly characterized John's compensation, $10,050, as wages in the original return. Petitioners bear the burden *456 of proof on this issue. Rule 142(a). The scant evidence concerning this issue is as follows: (1) petitioner accepted an offer to work as a stenographic reporter with Dearnley, Meier, in Albuquerque, New Mexico, in April 1980; (2) petitioners moved to Albuquerque, New Mexico, in June 1980; (3) petitioner worked as a stenographic reporter for Dearnley, Meier during the remaining part of the taxable year 1980; (4) Dearnley, Meier issued a wage and tax statement, Form W-2, to petitioner; (5) petitioner reported the $10,050 received from Dearnley, Meier as wages in his original return, Form 1040; (6) petitioners recharacterized the aforesaid amount as self-employment income in the amended returns, Form 1040X, filed on March 10, 1983, and September 19, 1983. Petitioners also introduced an agreement, dated January 30, 1981; the agreement established a payment schedule for payment due to John for reporting services performed as to January 30, 1981. The aforesaid agreement provides that "the foregoing and future payments are to be treated as John F. McCabe being an independent contractor." This agreement entered into in 1981, which taxable year is not before us, has no probative value *457 with respect to the monies earned by petitioner in 1980. Petitioners have failed to sustain their burden of proof. On the record before us, we determine that the aforesaid $10,050, were earned by petitioner as an employee of Dearnley, Meier. On this issue, we hold for respondent. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Respondent determined in his notice of deficiency, inter alia, that petitioners failed to report interest income in the amount of $100. At trial, respondent conceded that the aforesaid determination in the notice of deficiency is incorrect to the extent of $10; petitioners conceded the remaining amount of $90. ↩
2. Although not raised in the pleadings of either party, we deem the issue to be properly before the Court by consent, since the parties stipulated at trial that petitioners would be liable for self-employment tax to the extent that the Court should find that they derived earnings from self-employment. Rule 41(b)(1).↩
3. Filed subsequent to the issuance of the notice of deficiency, and after the petition in this case had been filed. The adjustments in the notice of deficiency, dated August 2, 1982, are predicated solely on petitioners' original return, Form 1040. Respondent stipulated as to the authenticity of the amended returns only for the purpose of aiding petitioners in explaining their position at trial.↩
4. Computed as follows: ↩
Mileage: 5,400 miles
at .20 per mile
$1,080.00
5. Petitioners are claiming depreciation for the months of November and December 1980; petitioners purported to take into account a cost basis of $46,500, a salvage value of $20,000, and a useful life of 30 years.↩
6. Determined as follows: Equipment and supplies
$155.71
Mailing & shipping expenses
3.89
Office in the home expenses
50.05
Total
$209.65
Office in the home expenses were determined as follows: Mortgage:
$232.46
Utilities: Electricity $8.70
water 9.07
17.77
$250.23
X .20
$50.05
All the amounts above are exclusive of interest and taxes, separately deducted by petitioners. The total of expenses, $250.23, was multiplied by 20 percent in order to determine the ratable amount of expenses allocable to one room of a five-room house.↩
7. Claimed as follows: ↩
Meals
$3,072.00 Car expenses
6,493.44 Gross Employee business expense
$9,565.44 Less: Employer's payments for
these expenses
(1,883.90)
Net Employee business expense
$7,681.54 8. Computed as follows: Gas, Oil, Lubrication
$15.95
Repairs
282.92
Tires, Supplies
59.94
Other: Insurance
153.00
Tags & Licenses
67.25
Depreciation
1,404.40
$1,983.46
Petitioner purchased his car, a Plymouth-Horizon, for $5,213.20, (exclusive of sales tax, finance charges, and insurance). Depreciation was computed as follows: Cost ($5,213.20) less salvage value ($1,000) equals basis for depreciation ($4,213.20). Depreciation using the straight-line method over a three-year useful life period equals $1,404.40. Petitioner used his car, a 1978 Plymouth Horizon, exclusively for business purposes. Automobile expenses under the optional method, would amount to $1,022, computed as follows: 5,110 miles at .20 per mile equals $1,022.↩
9. Petitioners arrived at the aforesaid figure by adding the following expenses allegedly paid or incurred by them: ↩
Transportation expenses in
$1,600
moving household goods and
personal effects
Expenses incurred for travel,
800
meals, and lodging expenses
in moving from the former
to the new residence
Pre-move travel, meals, and
800
lodging expenses in searching for
a new residence after getting a job
Temporary living expenses in New
300
Mexico during the 30 consecutive
days after getting employment
Expenses of buying a new residence
50
Total
$3,550
10. Computed as follows: ↩
Mileage - 2001 miles at .09
$180.09
per mile - according to
Road Atlas, Rand McNally 1971
Lodging expenses (exclusive of tax)
17.40
Temporary Living expense (cost of
239.00
lodging incurred for a 30-day period
after petitioners moved to Albuquerque
Total
$436.49
11. Petitioners claimed, on Schedule C of their amended return, Form 1040X, filed on March 10, 1983, business expense deductions in the amount of $7,200.06, deductible from business gross receipts in arriving at business income or loss.↩
12. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
13. Turner v. Commissioner,T.C. Memo. 1964-161↩.
14. John testified that the $3.25 deduction, allegedly attributable to union dues, was taken out of every paycheck. According to John, both he and his wife were paid biweekly, viz., 26 times a year. We note that $3.25 multiplied by 26 is $84.50, not $84. Furthermore, by petitioner's own admission, he ceased to be an employee of the New York State Division of Parole in April 1980. Thus, he did not work 26 payperiods for said employer. The record is devoid of any evidence regarding payment of union dues by Edna. The record is equally lacking in evidence as to whether John continued to pay union dues during the period that he was temporarily employed by the New York State Division of Parole (from April 1980 to mid-June 1980), or whether he paid union dues in regard to his employment with Dearnley, Meier.↩
15. Sales tax was separately deducted by petitioners.↩
16. Petitioners failed to present any evidence as to the alleged payment of a $15 fee with respect to petitioner's New York license.↩
17. Explained as follows: ↩
Depreciation
$374.72
Heat, etc.
85.00
Telephone
65.00
Business Machines Depreciation and
Office Equipment
100.00
Supplies
100.00
Mailing
200.00
Total
$924.72
18. Not testimony was offered with respect to the Albany home, or the apartment rented by petitioners in Albuquerque, New Mexico, prior to their purchasing a house in that city.↩
19. See our determination regarding issue 4, infra.↩
20. Sec. 62↩ limits deductions from gross income in computing adjusted gross income of employees to: (1) expenses of travel, meals and lodging while away from home in the performance of services as an employee; (2) other expenses to the extent covered by a reimbursement or other allowance arrangement by the employer; (3) business transportation expenses, other than cost of commuting to and from work; (4) outside salesperson's expenses attributable to soliciting business for the employer, away from the employer's place of business; and (5) employee's and self-employed person's moving expenses.
21. See fn. 5. ↩
22. Land is not depreciable. Sec. 1.167(a)-2, Income Tax Regs.↩
23. See fn. 7. ↩
24. Determined as follows: ↩
Allowable mileage - 5,130 miles
$1,026.00
at 20 cents per mile
Meals & lodging
621.85
Total
$1,647.85
25. Determined as follows: ↩
New York - Arizona - New Mexico - New York
$1,080
5,400 miles at 20 cents per mile
26. Furthermore, even if the issue were properly before this Court, petitioners would not be entitled to an investment tax credit as John testified that such credit had been claimed, and allowed, for a prior year.↩
27. See fn. 25.↩
28. This amount represents 2001 miles multiplied by 9 cents per mile, or $180.09, -- representing the mileage from New York, New York, to Albuquerque, New Mexico according to the Rand McNally Atlas (1971 ed.), the mileage rate is taken from Rev. Proc. 80-32, 1980-2 C.B. 767, and Rev. Proc. 80-7, 1980-1 C.B. 590↩ -- and lodging expenses of $17.40. 29. This amount represents rent paid for a 30-day period after petitioners arrived in Albuquerque, New Mexico, exclusive of amounts paid as cleaning fee ($160), security/damage deposit ($150), and key deposit ($9).↩
30. At trial petitioner requested that Schedule C on his amended return dated March 6, 1983, be disregarded, and the income reported therein considered as income earned as an employee, thus, not subject to self-employment tax, and the deductions therein considered as employee business expenses. On brief, however, petitioners again raise the aforesaid contention in regard to John's status as an employee.↩
31. Petitioners argue, accordingly, that they are entitled to deduct all the expenses relating to John's "trade or business" from his total income as a stenographic reporter in determining John's business income or loss on Schedule C (Profit or Loss from Business or Profession). Petitioners filed an amended return, Form, 1040X, on March 10, 1983, recharacterizing the $10,050 received from Dearnley, Meier in 1980, and reported as wages in the original return, Form 1040, as income from self-employment. Petitioners claimed Schedule C deductions in the amount of $7,200.06, thus reporting business income in the amount of $2,849.94. Some of the deductions claimed in the above-mentioned amended return were not claimed in the original return, Form 1040, others were claimed under different categories.↩