*76 OPINION.
Marquette:
There is no dispute concerning the fact of the total amount of loss sustained by the petitioner in connection with the Supreme Cloth Sponging Co. The point here in controversy is whether that loss occurred in 1925 or in 1926, either in whole or in part.
The loss consisted of two items. One item, for money loaned, amounted to $8,000. It seems clear to us from the record that petitioner sustained that loss in 1925. He knew in that year that the money loaned could never be recovered. By written contract in August 1925 petitioner agreed to cancel the debt if certain persons would buy his corporate stock at a specified price, and they did so. At the time the agreement was executed petitioner knew the exact amount he would lose by reason of his loans to the company, and by that agreement he definitely accepted that loss. Whether the purchasers of petitioner’s stock fulfilled their part of the contract, or whether they did not, would neither enhance his loss in respect of the money loaned nor reduce it. The amount of that loss was fixed, and its existence determined not later than August 1925. If treated as a loss, it was not sustained in 1926, the taxable year. If treated as a bad debt, it was clearly ascertained to be worthless in 1925, although not charged off until 1926. The statute requires that both take place during the same taxable year. In our opinion, *77 therefore, petitioner is not entitled to any deduction for 1926 in respect of the $8,000 loaned to the Sponging Co.
Regarding petitioner’s loss upon the sale of his corporate stock the conditions are different. The contract for sale was made, and part of the purchase price was paid in 1925, but by agreement the balance of the purchase money was not due until 1926. Pending payment of the deferred installments petitioner deposited his stock in escrow, to be delivered to the purchasers only if they met their deferred payments promptly. If they did not, petitioner was empowered to withdraw the stock from the escrow agent.
Upon this statement of facts the respondent contends that the sale of the stock in question was consummated in 1925. He argues that petitioner knew in 1925 that he could not recover upon his investment in the company more than the $5,000 agreed price, and therefore that petitioner also then knew the minimum amount of his loss. In support of this contention he cites George P. Sacks, 23 B.T.A. 307, and Darwin D. Martin, 24 B.T.A. 528. In each of those cases corporate stock was sold at a loss, the purchase price to be paid over a period of years. In neither case does it appear that the stock was held in escrow pending payment of the installments of the purchase price, with power in the seller to recall the stock upon failure to pay any installment. Nor does it appear in either case that the purchase money notes were of doubtful value at the time the contract of sale was made. Those cases, therefore, present facts materially different from those before us. What they decided was that section 212 (d) of the Revenue Act of 1926 only authorized the spreading of profit from installment sales over the years when received, and did not authorize a like spread of loss upon an installment sale. No such issue is presented in the present proceeding.
The question here raised has been before us on several occasions. In Theodore J. Swift, 20 B.T.A. 1099, the taxpayer contracted in 1921 to sell and convey certain lands. The purchase price was payable over a period of years and the executed deed for the property was deposited in escrow with instructions to deliver it to the purchaser when all the payments had been made in full. We there held that the sale was not consummated in 1921, but in 1924, when the payments were completed and the deed delivered to the purchaser by the escrow agent. That decision was affirmed, 54 Fed. (2d) 746. G. Allan Hancock, 25 B.T.A. 607, is to the same effect.
In Charles W. Dahlinger, 20 B. T. A. 176; affd., 51 Fed. (2d) 662, corporate stock was sold and title to it passed to the purchaser prior to December 31, 1921, although the purchase price was not fully paid until a later date. It appeared that payment of the deferred installments was not a condition precedent to the passing of title to the stock, and that failure to make the deferred payments *78 would not divest title from the purchaser. The sale, therefore, was held to have been consummated upon passing of title to the purchaser.
We think those cases are controlling, imder the facts here presented. Petitioner placed the stock in escrow to be delivered to the purchaser if and when the latter made prompt payment of the deferred installments as they fell due. The right to recall the stock from escrow if any deferred payment was not promptly made was expressly reserved to the petitioner. Clearly, full payment of the purchase price was a condition precedent, and title to the stock passed only when the purchase payments were completed, which was in 1926. Hence the sale was not consummated in 1925. It must be borne in mind that, although petitioner received promissory notes covering the deferred payments, the contract of sale makes it plain that those notes were neither given nor received as discharge of the unpaid balance. Furthermore, when the notes were given in 1925 their value was by no means certain and their ultimate payment was somewhat doubtful. If payment had been defaulted upon all or any considerable number of those notes, petitioner’s loss upon his stock would have been substantially greater than it turned out to be. While that fact, if standing alone, and unsupported by other facts, would probably be insufficient to support petitioner’s contention, in connection with all the circumstances of this case, we think it carries some weight. We conclude, therefore, that petitioner sustained a deductible loss in respect of his corporate stock in 1926, which should be allowed.

Decision will he entered wider Rule 50.