# STIVER v. COMMISSIONER OF INTERNAL REVENUE.

## No. 10768.

Circuit Court of Appeals, Eighth Circuit.

June 23, 1937.

A. F. Schaetzle and Wallace Mendelson, both of Des Moines, Iowa, for petitioner.

Louise Foster, Sp. Asst. to the Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Norman D. Keller, Special Assts. to the Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals redetermining a deficiency in the income taxes of the petitioner for the year 1930, caused by the disallowance of a deduction of $26,904 claimed by the petitioner to represent a loss sustained by him in that year from the sale of his stock in the Somerset Oil Company and from the sale by that company of its entire assets.

There is no substantial controversy as to the controlling facts, which are stated in the opinion of the Board as follows:

"Prior to 1923, petitioner acquired 5,400 shares of stock in the Boyd Oil and Gas Company (hereinafter called the Boyd Company) at a cost of $22,100. This company was a Delaware corporation with offices at Ashland, Kentucky. It owned certain oil and gas leases on lands located in Magoffin County, Kentucky. In 1923 the Somerset Oil Company was organized under the laws of Iowa for the purpose of taking over the property and liabilities of the Boyd Company. The petitioner was issued certain shares of stock in the Somerset Oil Company for his investment in the Boyd Company. He also acquired additional shares in the Somerset Oil Company at a cost of $23,600. He then owned 358 shares of stock in the Somerset Oil Company. The petitioner's investments in the Boyd Company and the Somerset Oil Company amounted to a total of $45,700. The operations of the latter company did not prove successful and the petitioner, as president, was duly authorized to wind up its affairs.

"On or about October 5, 1930, the Somerset Oil Company received an inquiry from one E. V. Arrowood as to whether it owned the properties of the Boyd Company and if they were for sale. The petitioner held numerous conferences with Arrowood from time to time after October 5, 1930, with regard to a sale of the assets and stock of

the Somerset Oil Company. In a memorandum agreement entered into on or about November 22, 1930, between the petitioner and Arrowood, it was provided that if the latter succeeded in selling the assets of the Somerset Oil Company for $75,000, Arrowood would be paid $10,000 for his services. On November 24, 1930, the petitioner addressed the following letter to Arrowood:

" 'Mr. E. V. Arrowood,
" '1414 Yale Place,
" 'Minneapolis, Minnesota.
" 'My dear Mr. Arrowood:

" 'Confirming your proposition of last Saturday the 22d instant please be advised that I am accepting same as follows:

" 'That I will place in escrow with Mrs. A. T. Conaway, Sec. & Treas., Somerset Oil Company, Three Hundred Fifty-eight (358) shares of its common stock, with full power to transfer by indorsement and on record books of the Somerset Oil Company, said shares on demand by you, to you or to your nominee, nominees and/or assigns, for the sum of fifty (50) cents on the dollar, i. e., Seventeen Thousand Nine Hundred Dollars ($17,900) and to lend my moral support in assisting you to purchase any and/or all other shares of said Somerset Oil Company stock now issued and outstanding at the same price, or any price in excess of 50¢ on the dollar. This agreement to become of full force and effect upon your acquisition of all of said stock from the stockholders or upon your selling of the assets of the Somerset Oil Company, which sale price is approved by me, and negotiable promissory notes, bonds and/or cash is received in full payment for said assets. Per your request this agreement will be accorded the strictest confidence.'

"Arrowood introduced to the petitioner, Harry Leaberry, of Baltimore, Maryland, president of the Leaberry Oil and Gas Company, a West Virginia corporation, as a prospective purchaser of the properties of the Somerset Oil Company. Under date of December 11, 1930, a written agreement was entered into between the Somerset Oil Company and the Leaberry Oil and Gas Company, under the terms of which the former agreed to convey all of its properties to the latter for a consideration of $65,000, evidenced by a note for $5,000, payable on or before February 10, 1931, and one for $60,000 payable on or before July 10, 1931. The agreement provided for the forfeiture of the $5,000 payment due on February 10,

1931, if the purchaser failed to perform the agreement in full. It was also provided that the Somerset Oil and Gas Company was to receive all income from oil and gas up to the time the full purchase price was paid, and that no accounting should be made to the purchaser for moneys so received. A further condition of the agreement was that the purchaser was to acquire the fee to certain lands owned by the Elkhorn Trust, of which the petitioner was trustee, for a consideration of $60,000.

"The note for $5,000 was paid on the due date; the $60,000 note was never paid. The agreement of sale entered into on December 11, 1930, was modified by a written instrument entitled 'conveyance' which was entered into between Somerset Oil Company and the Leaberry Oil and Gas Company on March 2, 1931. By this instrument the Somerset Oil Company proposed to convey its assets to the Leaberry Oil and Gas Company in consideration of the sum of $5,000 already paid by the latter company, and upon the condition that a new corporation would be formed under the laws of Delaware, and that the assets would be transferred to such company for all of the Class C common stock and 25,000 shares of the Class A preferred stock of such company.

"On February 1, 1932, the Leaberry Gas and Power Company, by C. B. Stiver, vice-president, and A. T. Conaway, secretary, executed a deed of conveyance purporting to transfer back to the Somerset Oil Company the properties transferred to the Leaberry Gas and Power Company as of March 2, 1931.

"Income tax returns of the Somerset Oil Company for the fiscal periods ended July 31, 1929, July 31, 1930, July 31, 1931, July 31, 1932, and July 31, 1933, were all signed by C. B. Stiver as president, and A. T. Conaway, as treasurer. No reference was made in any of these returns to any sale or sales of the corporation's assets, and the balance sheets incorporated therein carried from year to year the same assets that were taken over from the Boyd Company without any change, except for depletion and depreciation."

The petitioner, after writing the letter of November 24, 1930, to Arrowood concerning the sale of his (petitioner's) stock, delivered the stock certificates to the secretary-treasurer of the Somerset Oil Company with a copy of that letter and a power

of attorney authorizing the transfer of the stock in accordance with the terms of the letter. The record shows that Arrowood never paid the petitioner any portion of the purchase price of his stock and that the secretary-treasurer of the Somerset Oil Company never transferred the stock to Arrowood, but subsequently turned it back to the petitioner.

No entry was ever made upon the books of the company showing a sale of its assets in 1930 or at any other time, and its income and expenses were recorded regularly in its books until 1933, when the company was finally liquidated. On March 2, 1931, the Somerset Oil Company, the Leaberry Oil & Gas Company, and Harry Leaberry executed a "Contract and Plan of Reorganization" whereby certain assets of the Somerset Oil Company and of the Leaberry Oil & Gas Company were to be merged and transferred to a new corporation to be formed. In that instrument the agreement of December 11, 1930, under the terms of which the Somerset Oil Company agreed "to convey" all of its assets to the Leaberry Oil & Gas Company, was referred to as an "option agreement." On December 4, 1933, the petitioner, in a letter written to the directors of the Somerset Oil Company, said: "The writer, as liquidating director, has been offering for sale the property of the Somerset Oil Company since directed to liquidate said company by order of its stockholders several years ago, and has personally visited and communicated with many prospects but with no success until the present time."

The Board found that the petitioner did not sell his stock in the Somerset Oil Company to Arrowood in 1930; that his letter of November 24, 1930, was only a proposal to sell, which was not shown to have been accepted by Arrowood; that the petitioner had not parted with title to his shares; and that he had shown no loss sustained in 1930 with respect to his investment in such stock. It held that he was not entitled to the claimed deduction.

■ The question presented for review is whether the petitioner, as a result of his 1930 negotiations involving his stock in the Somerset Oil Company and the assets of that company, sustained a deductible loss in 1930 within the meaning of section 23 of the Revenue Act of 1928, c. 852, 45 Stat. 791 (26 U.S.C.A. § 23 and note), the pertinent provisions of which are:

"§ 23. Deductions from gross income

"In computing net income there shall be allowed as deductions: * * *

"(e) Losses by individuals. In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

"(1) if incurred in trade or business; or

"(2) if incurred in any transaction entered into for profit."

While the above statute permits the deduction of losses from gross income, "it requires such losses to be 'realized' by some closed and completed 'identifiable event' (United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120) which definitely settles and determines the existence of and the amount of such loss (Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 77 L.Ed. 670; Weiss v. Wiener, 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720; United States v. S. S. White Dental Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120), and it requires such losses to be actual and real (Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 [97 A.L.R. 1355]; Burnet v. Huff, 288 U.S. 156, 161, 53 S.Ct. 330, 77 L.Ed. 670; United States v. Flannery, 268 U.S. 98, 45 S.Ct. 420, 69 L.Ed. 865; McCaughn v. Ludington, 268 U.S. 106, 45 S.Ct. 423, 69 L.Ed. 868." Shoenberg v. Commissioner of Internal Revenue (C.C.A.8) 77 F.(2d) 446, 448.

■ Where the identifiable event relied upon to establish a loss is a sale, the transaction must ordinarily be closed and completed in the year in which the deduction is taken, [Shoenberg v. Commissioner of Internal Revenue, supra; Rand v. Helvering (C.C.A.8) 77 F.(2d) 450, 451; Howard v. Commissioner of Internal Revenue (C.C.A.6) 56 F.(2d) 781; Deeds v. Commissioner of Internal Revenue (C.C.A.6) 47 F.(2d) 695, 696], although it is not necessary that a sale of personal property shall be accompanied by delivery if "the obligation to deliver is so fixed that the loss is reasonably certain in fact and ascertainable in amount," Ruml v. Commissioner of Internal Revenue (C.C.A. 2) 83 F.(2d) 257, 258; Hoffman v. Commissioner of Internal Revenue (C.C.A.2) 71 F.(2d) 929.

The petitioner does not contend that the law is otherwise, but bases his contention that he sustained a loss in 1930, and that the amount thereof was determined in that year, upon two propositions:

508

(1) That there was a closed and completed sale of his shares of stock to Arrowood in 1930.

(2) That there was a closed and completed sale of the entire assets of the Somerset Oil Company in 1930, pursuant to a resolution to liquidate the company, which sale established his minimum loss to be the difference between the cost of the stock to him and the maximum amount he could realize upon liquidation of the assets of the company if the agreement of December 11, 1930, were fully performed.

In dealing with the alleged sale of the petitioner's stock to Arrowood, we shall assume that the letter of November 24, 1930, from the petitioner to Arrowood evidences an agreement between the two. (The record contains no evidence of any offer by Arrowood to purchase the petitioner's stock other than the petitioner's testimony that he and Arrowood had a conversation on November 22, 1930, concerning the sale of the petitioner's stock to Arrowood, and it is not clear whether the letter was an acceptance of an offer by Arrowood to purchase or merely an offer by the petitioner to sell, and the finding of the Board that it was an offer to sell is probably conclusive.) Assuming the existence of an agreement between the petitioner and Arrowood evidenced by the letter, the question then arises whether the agreement was a closed and completed sale of the petitioner's stock which established a loss in 1930. We think the agreement was not a sale, but at best a mere option, under the terms of which Arrowood could purchase the stock for $17,900, if, as, and when he acquired the remaining stock of the Somerset Oil Company or sold the assets of that company. The petitioner was never paid all or any part of the $17,900 purchase price for his stock, the stock was never transferred to Arrowood, and Arrowood never bound himself to pay for it. There was, therefore, no completed sale of the stock. Furthermore, Arrowood never acquired the outstanding stock of the Somerset Oil Company belonging to other stockholders; so his option to purchase the petitioner's stock never went into effect, unless he (Arrowood) sold the assets of the Somerset Oil Company. Whether he sold these assets or whether they were in fact sold under the agreement of December 11, 1930, between the Somerset Oil Company and the Leaberry Oil and Gas Company, is the next question for determination. If the assets were not sold in 1930, the question of who negotiated the agreement is obviously of no consequence.

In determining whether these assets were in fact sold in 1930, several of the provisions of the agreement of December 11, 1930, are significant. The Somerset Oil Company did not "convey," but agreed "to convey," its assets to the Leaberry Company upon payment of the full purchase price. The Somerset Oil Company was to receive all income from its assets until the purchase price was paid in full, and no accounting of such income was to be made to the purchaser. The Somerset Oil Company retained the right to rescind the agreement "to sell" certain of the described lands. The agreement was to be null and void if the Leaberry Company failed to pay the $5,000 note given as evidence of part of the purchase price, and the agreement might be declared null and void by the Somerset Company if the $60,000 note evidencing the remainder of the purchase price was not paid. Significant also is the reference to the agreement of December 11, 1930, in the "Plan of Reorganization" of the Leaberry Oil & Gas Company as an "option agreement." These circumstances, together with the fact that the balance sheets attached to the income tax returns of the Somerset Oil Company for the years 1929, 1930, 1931, 1932, and 1933 listed the same assets originally acquired from the Boyd Company, and the fact that this alleged sale was never reflected in the books of the Somerset Oil Company, indicate that the Somerset Oil Company (acting through its president, the petitioner) and the Leaberry Oil & Gas Company did not initially intend, and did not subsequently treat, the agreement of December 11, 1930, as such a present transfer of the Somerset Oil Company's assets as would constitute a completed sale in 1930. MacDonald v. Commissioner of Internal Revenue (C.C.A.2) 76 F.(2d) 513, 514. There was on December 11, 1930, no transfer of the benefits or burdens of ownership. While the agreement specifically provided that the assets would be conveyed upon payment of the full purchase price, there is nothing to indicate that the notes given by the Leaberry Company were to be accepted as payment or as anything more than evidence of the obligation to make the deferred payments required by the agreement. In the absence of any evidence of any understanding or intention that the notes were to be accepted as the equiva-

lent of cash, they cannot be so considered. Baker v. Salzenstein, 314 Ill. 226, 145 N.E. 355, 358; Meyer v. Lathrop, 73 N.Y. 315, 319; Busch v. Manahan, 56 N.D. 491, 217 N.W. 658, 659; 55 C.J. 522, § 519. The provision that the agreement was to be null and void if the $5,000 note was not paid, and might be declared null and void if the $60,000 note was not paid, is strong, if not conclusive, evidence that the parties did not intend the notes to constitute payment of the purchase price.

The case of Silberblatt v. Commissioner of Internal Revenue, 28 B.T.A. 73, involved a similar situation. There the taxpayer had executed a contract for the sale of corporate stock, and part of the purchase price was paid in 1925, but the balance of the purchase money was not due until 1926. Pending payment of the deferred balance, the taxpayer deposited the stock in escrow, to be delivered to the purchasers only if they met their deferred payments, evidenced by promissory notes, promptly. If they did not meet such payments, the taxpayer was empowered, under the terms of the written agreement, to withdraw the stock from the escrow agent. The Commissioner there argued that the taxpayer knew in 1925 that he could not recover upon his investment more than the agreed price for which he contracted to sell the stock, and that the minimum amount of his loss was therefore fixed by the sales contract. The Board of Tax Appeals refused to accept that theory and held that the contract of sale was completely consummated and the loss established in 1926, when the last deferred payment was made. The following portion of the Board's opinion is pertinent here (page 78):

"Petitioner placed the stock in escrow to be delivered to the purchaser if and when the latter made prompt payment of the deferred installments as they fell due. The right to recall the stock from escrow if any deferred payment was not promptly made was expressly reserved to the petitioner. Clearly, full payment of the purchase price was a condition precedent, and title to the stock passed only when the purchase payments were completed, which was in 1926. Hence the sale was not consummated in 1925. It must be borne in mind that, although petitioner received promissory notes covering the deferred payments, the contract of sale makes it plain that those notes were neither given nor received as discharge of the unpaid balance."

The same reasoning is here applicable. If the contract of sale in that case was not a completed sale in 1925, the alleged sales in this case were neither of them completed in 1930; and that is our conclusion.

The decision of the Board of Tax Appeals is affirmed.